# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

### CHATTANOOGA DIVISION

| | | |
|---|---|---|
| TYQUAL MONTA MCGOWAN | ) | |
| Plaintiff, | ) | FILED |
| v. | ) | MAR 3 0 2026 |
| | ) | Clerk, U. S. District Court Eastern District of Tennessee At Chattanooga |
| WAYNE SKINNER, | ) | |
| individually and official capacity; | ) | |
| RACHEL HODGES, | ) | |
| Individually | ) | Case Number. 1-26-CV-90 |
| LISA EARLS, | ) | Judge M. Donough |
| Individually | ) | Magistrate Judge. Steger. |
| SYDNEY SHAW, | ) | |
| individually and official capacity; | ) | |
| HAMILTON MCCALEB, individually; | ) | |
| TENNESSEE DEPARTMENT OF | ) | |
| CHILDREN'S SERVICES; | ) | |
| JOHN DOE 1-10, individually | ) | |
| | ) | |
| HAMILTON COUNTY, a political | ) | |
| subdivision acting by and through | ) | |
| the Hamilton County Sheriff's | ) | |
| Department, | ) | |
| AUDREY JONES; | ) | |
| Individually and official capacity | ) | |
| Defendants. | ) | **JURY DEMANDED** |

## COMPLAINT

## INTRODUCTION

1. Plaintiff Tyqual McGowan brings this civil rights action pursuant to 42 U.S.C. § 1983 to redress violations of the Fourth, First, and Fourteenth Amendments to the United States Constitution arising from the unlawful seizure and removal of Plaintiff's minor child by investigators employed by the Tennessee Department of Children's Services ("DCS").

2. Defendants removed Plaintiff's minor child from her custody without a warrant, court order, true exigent circumstances, or verified information , and engaged in coercive investigative practices, misrepresentation of evidence, and other unconstitutional conduct that interfered with Plaintiff's fundamental parental rights.

3. As a result of Defendants' actions, Plaintiff suffered emotional distress, reputational harm, and deprivation of her constitutional right to family integrity and due process of law.

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 2 of 56    PageID #: 2

## PARTIES

4. Plaintiff Tyqual McGowan is an adult citizen and resident of Hamilton County, Tennessee. Plaintiff is the mother and legal guardian of the minor child involved in the events giving rise to this action.

5. Defendant Wayne Skinner (Skinner) was at all relevant times a Special Investigator employed by the Tennessee Department of Children's Services ("DCS") and acting under color of state law. Defendant Skinner is sued in his Individual Capacities for compensatory and punitive damages, and in his Official Capacities for the declaratory and injunctive relief requested in Count XIX

6. Defendant Lisa Earls was at all relevant times a supervisor and/or decision-maker employed by the Tennessee Department of Children's Services who approved, authorized, or ratified the removal of Plaintiff's child. This Defendant is sued in his or her Individual Capacities for compensatory and punitive damages, and in their Official Capacities for the declaratory and injunctive relief requested in Count XIX.

7. Defendant Audrey Jones was at all relevant times an employee or investigator of the Tennessee Department of Children's Services who participated in the investigation and removal of Plaintiff's child. This Defendant is sued in her Individual Capacities for compensatory and punitive damages, and in their Official Capacities for the declaratory and injunctive relief requested in Count XIX.

8. Defendant Sydney Shaw was at all relevant times a supervisor and/or decision-maker employed by the Tennessee Department of Children's Services. She approved, authorized, substantiation of child abuse and child abandonment without notice and in violation of Tennessee Department of Children's Services policy and the law. She is sued in her Individual Capacities for compensatory and punitive damages, and in her Official Capacities for the declaratory and injunctive relief requested in Count XIX.

9. Defendant Hamilton McCaleb was at all relevant times a School Resource Officer assigned to Ooltewah High School and acting under color of state law as a law enforcement officer. McCaleb is alleged to have been involved in the reporting, handling, or communication of allegations related to the investigation of Plaintiff. Defendant McCaleb is sued in his individual capacity for compensatory and punitive damages, and in his Official Capacities for the declaratory and injunctive relief requested in Count XIX.

10. Defendant Tennessee Department of Children's Services is a state agency responsible for child abuse investigations and foster care placement.

11. Defendant Hamilton County is a political subdivision of the State of Tennessee, organized and existing under the laws of the State of Tennessee. Hamilton County acts by and through its departments, agencies, and employees, including the Hamilton County Sheriff's Office and the Hamilton County Board of Education. At all relevant times, Hamilton County was responsible for the training, supervision, and conduct of its officers, including Defendant Hamilton McCaleb, and for the policies and customs governing their interactions with the Department of Children's Services. Defendant Hamilton County is a "person" subject to suit under 42 U.S.C. § 1983.

12. Defendant Rachel Hodges ( "Hodges") was at all relevant times a court-appointed Guardian ad Litem for Plaintiff's minor child. Hodges is alleged to have acted outside the scope of her court appointment by communicating information regarding the child's case to the Dcs attorney, Ashley Ivey, without disclosure to Plaintiff, Plaintiff's Attorney or the court, and by participating in investigative and advocacy activities that influenced the continued removal of Plaintiff's child. Defendant Hodges is sued in her individual capacity for actions taken outside the scope of her quasi-judicial duties, specifically for engaging in investigative functions and an extra-judicial conspiracy with DCS to suppress exculpatory evidence.

13. Defendants John Doe 1–10 are employees, agents, or representatives of the Tennessee Department of Children's Services whose identities are currently unknown to Plaintiff, but who participated in the investigation, decision-making, removal of foster children, closure of Plaintiff's foster home, and/or denial of due process rights as alleged herein. Their actions include but is not limited to sustaining abuse and abandonment against Plaintiff without following DCS Policy/law

Defendants John Doe 1–10 are sued in their individual and official capacities. Plaintiff will seek leave to amend this Complaint to substitute their true names once they are identified.

14. Defendants acted jointly and in concert and each is responsible for the acts of the others.

Case 1:26-cv-00090-TRM-CHS     Document 1     Filed 03/30/26     Page 5 of 56     PageID #: 5

## JURISDICTION AND VENUE

15. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, which provides a cause of action for the deprivation of constitutional rights under color of state law.

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which grants federal district courts jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States.

17. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1343(a)(4), which provide jurisdiction over civil rights actions seeking redress for the deprivation of rights secured by the Constitution and federal law.

18. At all times relevant to this action, Defendants were acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Tennessee and its political subdivisions.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

20. Specifically, the investigation, seizure, and removal of Plaintiff's child, as well as the actions of Defendants, occurred within Hamilton County, Tennessee, which is located within the Chattanooga Division of the United States District Court for the Eastern District of Tennessee.

21. Accordingly, jurisdiction and venue are proper in this Court.

22. Plaintiff seeks prospective declaratory and injunctive relief against state officials in their official capacities to prevent ongoing violations of federal law.

23. Such relief is authorized under the doctrine established in Ex parte Young, which permits suits against state officials for prospective relief to end continuing violations of the Constitution.

## FACTUAL ALLEGATIONS

### I.      The Initial Encounter

24. On April 10, 2025, Defendant Hamilton McCaleb, acting as a School Resource Officer, communicated to DCS investigators, including Defendant Wayne Skinner, that Plaintiff's minor child had reported abuse to a school guidance counselor.

25. Upon information and belief, no such report was ever made by the child to any school official, and no mandated reporter documentation existed to support this claim.

26. Defendant McCaleb's transmission of this unverified information was not a mere mistake, but a deliberate or reckless act intended to trigger an emergency DCS response where no emergency existed. McCaleb's actions were "the proximate cause" of the subsequent constitutional violations

27. Defendant McCaleb did not confirm the alleged report with the guidance counselor or review any documentation before representing that such a disclosure had occurred.

28. This false or unverified information was relied upon by DCS investigators to initiate and justify the investigation and removal of Plaintiff's child.

29. At the direction of Defendant Wayne Skinner, Defendant McCaleb was instructed to contact the Atlanta Police Department to initiate criminal charges against Plaintiff.

Upon information and belief, Defendant McCaleb acted on these instructions or otherwise communicated unverified allegations to outside agencies, despite the lack of probable cause.

30. Despite the seriousness of initiating criminal proceedings, Defendant McCaleb relied upon false or unverified information and failed to conduct any reasonable investigation before taking action.

31. Defendant Wayne Skinner, a Special Investigator with the Tennessee Department of Children's Services, arrived at Plaintiff's mother's residence located at 913 West 39th Street, Chattanooga, Tennessee at approximately 4pm.

32. Wayne Skinner interviewed with J.R.; the interview was conducted before Tyqual McGowan arrived at approximately 5pm on April 10, 2025.

33. Defendant Wayne Skinner interviewed several children present at the residence including Plaintiff daughter J.R.

34. During these interviews, each child denied being abused nor had they witnessed abuse by Plaintiff.

35. Defendant Skinner then attempted to interview Plaintiff.

36. Plaintiff declined to answer questions and informed Skinner that she would not participate in an interview without an attorney present.

37. Defendant Wayne Skinner left the residence for approximately ten minutes and then returned requesting to speak with additional children.

38. After briefly returning, Skinner again left the residence. He then returned again requesting to meet with the last child who was at wrestling practice.

39. Plaintiff subsequently departed the residence with the younger children leaving the older children to spend the night with her mother.

40. Shortly thereafter, Defendant Skinner contacted Plaintiff by telephone on April 10, 2025 at 7:55 pm and stated that he had received approval to remove Plaintiff's minor child from her custody.

41. Believing that Defendants had obtained lawful authority to remove her child, Plaintiff turned her vehicle around and retrieved her child from her mother's residence. Plaintiff relied on this misrepresentation when she turned her vehicle around to receive her child and have J.R. pack belongings.

42. Plaintiff was falsely led to believe that a court order existed authorizing the removal of Jayla at 7:55 PM on April 10, 2025. Plaintiff's act of retrieving her child and transporting her was not an act of voluntary consent but fraudulent consent, submission to a claim of lawful authority that was materially false. Consent obtained through such deception is legally void.

43. Once at 6805 Flagstone Dr. Plaintiff asked Wayne Skinner and Audrey Jones why an investigation had been initiated and what allegations were being made against her. Defendants Wayne Skinner and Audrey Jones did not provide a clear or detailed explanation of the basis for the investigation. Instead, Wayne Skinner stated only that "there was a report that J.R was abused and you were the abuser," without identifying the alleged incident, the reporting individual, or any supporting facts.

44. Wayne Skinner then began trying convince Tyqual McGowan to sign paperwork to remove J.R. Plaintiff questioned if they had authority to remove J.R. why would she

McGowan v. Skinner, et al. | Complaint
Page 9 of 56
Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 9 of 56    PageID #: 9

need to sign anything. At this point no terms or explanation of what a safety plan or IPA consisted of was explained.

45. Investigator Wayne Skinner then wrote a note falsely representing the Plaintiff it stated, I Tyqual McGowan can no longer provide for my child. I wish to place her in Dcs custody.

46. Plaintiff did not give Skinner permission to write a note signing over custody, and did not sign the note. When Tyqual McGowan refused to sign the note written by Wayne Skinner he appeared frustrated and responded all offers are now off the table.

47. Plaintiff offered lawful and safe alternatives, including placement with J.R. grandmother until the morning, but Defendants ignored these options.

48. Plaintiff was then informed that her child would not be permitted kinship placement with Plaintiff's mother at all. Tyqual McGowan asked if she signed the paperwork would her daughter be able to go with her mom. Wayne Skinner responded no they would have to run background checks and make sure she was a safe placement. Tyqual McGowan responded her mother background was fine. The defendants both in agreement then mentioned fingerprinting. Wayne Skinner informed Plaintiff that even if she signed the paperwork her daughter could not be placed with her mother until she submitted fingerprinting and wait for them to come back.

49. Defendants imposed placement requirements that did not align with Tennessee law governing kinship placements as alternatives to foster care. Defendants imposed unnecessary fingerprinting requirements for emergency placement with J.R. grandmother compared to other parents, applied inconsistently. Defendant failed to meet the threshold of Reasonable Efforts before placing J.R. into foster care.

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 10 of 56    PageID #: 10

50. Defendant Audrey Jones disparaged Plaintiff's religious faith while proceeding with the removal. Plaintiff stated she had faith in God everything would work out. Audrey responded you have faith in the wrong thing. Audrey Jones then attempted to convince the plaintiff she didn't love her child because she did not sign the document.

51. Audrey then left the house and she waited in the car. Wayne Skinner remained in the home for a few minutes then left the home as well. The defendants remained outside in their cars until transportation arrived to pick up defendants niece and nephews.

52. After the three little children were removed J.R. asked why was all this going on the defendants stated there was an anonymous report. Defendant Skinner and Audrey Jones refused or failed to provide any additional details regarding the circumstances surrounding the report.

53. During the course of the investigation, Defendant Wayne Skinner made a phone call. The person on the phone explained to the Plaintiff that if she didn't sign the document they would press criminal charges and make it take at least eight months for Plaintiff to regain custody of her child.

54. Plaintiff asked to see the document they wanted her to sign.

55. Wayne Skinner handed Tyqual McGowan a blank document, with no plan, statement or agreement and requested her signature. By presenting a blank document for signature, Defendant Skinner attempted to induce Plaintiff into a vague and open-ended waiver of her parental rights, which constitutes a 'shocks the conscience' violation of procedural due process.

56. The defendants actions were a direct violation of their own policy Tennessee DCS Policy 31.18.

57. Plaintiff gave him the paper back and stated she would like to wait to speak to an attorney. Plaintiff didn't understand what the document was and neither investigators explained it or had the form filled out so the defendant could read and understand what she was signing and agreeing to.

After waiting in their car again around 11pm Wayne Skinner came to the door and confirmed once again they had an order to remove the child J.R. and they were waiting for the transport approval to come through.

58. Defendant Wayne Skinner told Tyqual McGowan that they needed her to come down to their office.

59. He gave her two options either he could call the police on her or they could escort her down to the location.

60. Tyqual McGowan was already embarrassed and police would add further humiliation so agreed to the escort as suppose to being taken by officers. Although framed as an 'escort,' Plaintiff was effectively in constructive custody, as Defendants made it clear that non-compliance would result in immediate arrest and further public humiliation.

61. Defendant Wayne Skinner said J.R. could ride with mom.

62. Defendant(s) texted Tyqual McGowan the location they wanted her to arrive to on April 10, 2025 at 11:19 pm

63. Defendants followed Plaintiff as an escort to the location they had provided.

64. Defendants obtained a verbal order from the Judge at approximately 11:56 PM that April 10,2025. The Fourth Amendment seizure of J.R. was fully consummated at 7:55 PM when Plaintiff submitted to Skinner's false claim of authority; the subsequent

verbal order obtained four hours later cannot retroactively cure a warrantless, non-exigent seizure.

65. At all relevant times, it was clearly established under the Fourth and Fourteenth Amendments that government officials may not remove a child from a parent's custody without a warrant, court order, or exigent circumstances presenting an immediate threat of serious bodily harm.

**<u>Lack of Exigent Circumstances</u>**

66. The children present in the home appeared safe and free from any immediate danger

67. Although J.R. had minor scratches on her body, Plaintiff did not cause those scratches, and Defendants possessed no evidence indicating the Plaintiff had inflicted any injury upon the child.

68. Defendants did not observe any injuries requiring emergency medical care or any circumstances indicating J.R. faced an imminent risk of serious bodily harm, no previous history of abuse or neglect.

69. Defendants did not seek or request medical evaluation of the alleged scratches prior to removing the child.

70. Defendants did not seek medical treatment of J.R. scratches after child was removed and placed in state custody.

71. During the course of the investigation, Defendant Wayne Skinner and Audrey Jones left the residence and returned multiple times, demonstrating that Defendants had sufficient time to seek judicial authorization before removing J.R from Plaintiff's custody and coercion mother to DCS office with child.

72. Plaintiff's compliance was not voluntary; it was the direct result of Defendants' material misrepresentations regarding their legal authority, which effectively seized the child before any judicial review occurred.

73. Defendants did not obtain a verbal order from a judge until approximately 11:56 p.m., after coercion Plaintiff into taking J.R. to the Department of Children's Services office and after the removal process had already begun.

74. As soon as the oral permission was granted Audrey Jones asked Tyqual McGowan to stop the intake process and step in another room she stated we have received permission to take J.R.

75. The removal therefore occurred in the absence of exigent circumstances and without a warrant, in violation of Plaintiff's clearly established constitutional rights to family integrity and freedom from unreasonable seizure.

76. Tyqual McGowan's mother went to the Juvenile Court when the court opened on 04/11/2025 to be considered for kinship placement the staff gave her a number to call. The person she spoke with told her if she wanted Jayla she would have to file a petition through the court.

## Judicial Deception

77. The conduct of Defendant Skinner and his colleague Audrey Jones on April 10, 2025, objectively contradicts any claim of exigent circumstances.

78. By voluntarily exiting the residence and remaining in a vehicle for a significant duration while the children remained in Plaintiff's sole care, Defendants demonstrated a subjective and objective belief that the children were in no immediate danger.

79. This 'waiting period' proves that the seizure was not a response to an emergency, but a calculated and reckless bypass of the law.

80. Defendant Skinner and Audrey Jones acted with reckless disregard for Plaintiff's constitutional rights.

81. No reasonable officer would believe that a child is in 'imminent risk of serious bodily harm' while simultaneously leaving that child in the unsupervised care of the alleged abuser to conduct phone calls or sit in a vehicle or leave the children altogether for extended periods of time .

82. Specifically, Wayne Skinner's and Audrey Jones' decision to leave the children in Plaintiff's custody while they retreated to the vehicle for an extended period of time constitutes a 'break in the chain' of any alleged exigency.

83. The exigency had dissipated.

84. Lack of Contemporaneous Danger.

85. Defendant Skinner used inflammatory and medically unsupported terminology to mislead the issuing magistrate, intentionally escalating a minor, explained scratch into a narrative of physical abuse to secure a verbal order. Defendants utilized these medically inaccurate terms—"cuts" and "bruises"—specifically to bypass the high legal threshold required for a warrantless removal, knowing that "superficial scratches" do not constitute an "immediate risk of serious bodily harm" under the Fourth Amendment.

86. By characterizing the alleged injury in exaggerated or misleading terms without medical Defendants recklessly disregarded the truth and misrepresented material facts.

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 15 of 56    PageID #: 15

87. Defendants failed to conduct a reasonable investigation and instead relied on speculative or exaggerated descriptions.

88. Defendant Skinner's attempt to obtain warrants in Georgia before completing a local investigation or speaking with the child's primary witnesses demonstrates a pre-determined intent to seize the child, rather than a good-faith response to an emergency.

89. Defendants ignored clear exculpatory evidence (e.g., security footage, records or statements that contradicted their claims.

**DCS CONCLUSION**

90. On April 15,2025 Defendant Wayne Skinner testified that J.R. made reports of abuse to guidance counselor and SRO. He testified he spoke directly to the guidance counselor.

91. During court proceedings, Defendant Rachel Hodges withheld information that contradicted DCS case while Special investigator Wayne Skinner testified falsely that the child reported abuse to a school officials, even though she knew the child's account contradicted this testimony.

92. By withholding the child's statements and failing to correct misrepresentations to the court, Defendant Hodges acted outside her role as a neutral officer of the court and engaged in prosecutorial functions outside the scope of GAL immunity.

93. April 2025 Ooltewah High School staff confirmed they had not communicated or reported anything to DCS or any other third party in regards to J.R.

94. On 05/19/2025 DCS attorney Ashley Ivey referenced information from GAL Rachel Hodges in court a statement about J.R. after J.R. had only communicated with Rachel Hodges.

95. During court proceedings, on 5/19/2025 CPS attorney spoke on behalf of Defendant Rachel Hodges, representing her position to the judge rather than Hodges speaking directly.

96. By allowing DCS attorney Ashley Ivey to speak for her, Defendant Hodges abdicated her independent role as a neutral officer of the court and further aligned her actions with the investigative interests of DCS rather than the child's best interests.

97. July 2025 Plaintiff is and was at all relevant times a licensed foster parent in the State of Tennessee, DCS substantiated allegations of abuse and abandonment against Plaintiff. At no time prior to the substantiation did DCS provide Plaintiff with written notice of the allegations, nor did DCS provide any information regarding her right to appeal or request a hearing. Defendants violated Plaintiff's due process and DCS's policy/law.By substantiating abuse without notice or a hearing, DCS imposed a permanent 'black mark' on Plaintiff's record, effectively stripping her of her protected property interest in her foster care license without Due Process.

98. Closure of Plaintiff's Foster Home and Loss of Foster Children. Subsequent to the substantiation, DCS closed Plaintiff's foster home, effectively terminating her ability to provide foster care services.

99. On August 4, 2025 Testimony and investigation revealed that no such report had been made to the school resource officer and/or the guidance counselor by J.R. cps attorney

Ashley Ivey confirmed J.R. testimony. This testimony completely contradicted Wayne Skinner's previous Testimony and sworn statements from April 2025.

100. On August 4, 2025, DCS attorney Ashley Ivey requested the court dismiss the case against Plaintiff.

101. During that proceeding, the DCS attorney, Ashley Ivey, referenced interviews conducted by the Guardian ad Litem Rachel Hodges supported dismissal.

102. The allegations forming the basis for the removal were therefore determined to be unfounded and untrue.

103. The interviews mentioned by DCS attorney were not made previously aware to the Plaintiff or the Plaintiff's attorney nor were they submitted to the court.

104. This clearly establish internal sharing of information between Guardian ad litem Rachel Hodges and DCS attorney Ashley Ivey.

105. The internal sharing and withholding of GAL communications constitutes a fundamental breakdown of procedural due process.

106. Plaintiff was further denied access to the evidence that would have supported her defense, including exculpatory statements from her child, and was prevented from timely presenting objections or alternative evidence.

107. By withholding and selectively using GAL communications, Defendants acted with deliberate or reckless disregard for Plaintiff's constitutional rights, contributing to the emotional distress, reputational harm, and deprivation of parental rights described elsewhere in this Complaint.

108. Defendant Rachel Hodges Shared undisclosed information with DCS attorney.

109. Defendant Rachel Hodges Provided input, information or recommendations that were not neutral but displayed an alliance with DCS attorney, Ashley Ivey.

110. Defendant Rachel Hodges actions Contributed to decisions that caused Plaintiff's child's continued removal.

111. Defendant Hodges denied Plaintiff's minor child the opportunity to attend court, despite the child's repeated requests to be present and have her voice heard.

112. Defendant Hodges failed to submit letters written by the child to the court or otherwise inform the judge of the child's expressed wishes in April 2025 and May 2025. The child therapist with Youth Villages documented how she encouraged J.R. to write a letter to the judge. The notes from Youth Villages document the child desire to enter court and their effort to encourage her.

113. In order for cps attorney to have information that was not disclosed during court on multiple occasions demonstrates a Meeting of the minds. The seamless sharing of undisclosed, exculpatory information between Defendant Hodges and Attorney Ivey constitutes a 'meeting of the minds' to suppress the child's true testimony and prolong the state's unlawful custody. Rachel Hodges abandoned her role as an officer of the court.

114. Defendant Rachel Hodges actions suggest she was engaged in an unlawful agreement and coordinated plan with DCS attorney Ashley Ivey.

115. Defendant Rachel Hodges' conduct interfered with Plaintiff's ability to present her case and the child's ability to be heard, contributing to emotional distress, reputational harm, and the deprivation of parental and familial rights.

116. Defendant Rachel Hodges, acting outside the scope of her court-appointed duties as Guardian ad Litem, coordinated with DCS investigators and the DCS attorney to advance false claims and to withhold Plaintiff's child's true testimony from the court.

117. These actions included allowing DCS attorney Ashley Ivey to speak on her behalf, failing to submit the child's letters, remaining silent while investigators presented misrepresentations, and keeping interviews that directly Dismissed cps allegations out of court and off the court records.

118. Defendant Hodges' coordinated acts with Ashley Ivey constituted overt steps in furtherance of a conspiracy to deprive Plaintiff of her constitutional rights.

119. Defendant Hodges functioned as a de facto investigator for the State, forfeiting quasi-judicial immunity.

120. Defendant Rachel Hodges may assert quasi-judicial immunity, claiming she is shielded from liability because she was appointed as a Guardian ad Litem to represent the best interests of the minor child.

Plaintiff alleges and asserts that Hodges acted outside the scope of her neutral duties, including:

Withholding letters written by the child from the court, preventing the judge from considering the child's expressed wishes;

Denying the child the opportunity to attend court despite repeated requests to participate;

Allowing Ashley Ivey to speak on her behalf, effectively abandoning her independent role; Remaining silent while investigators testified falsely that the child reported

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 20 of 56    PageID #: 20

abuse to school officials, even though Hodges knew the child's account contradicted those statements.

121. Hodges never disclosed to the court that J.R. denied making reports or any of the interviews that supported it.

122. By engaging in the foregoing acts, Hodges acted as an agent of the DCS investigation, rather than as a neutral officer of the court, acting in the best interest of the child and therefore her actions fall outside the protections of quasi-judicial immunity.

123. Defendant Hodges may also assert she acted in good faith. Plaintiff alleges due to letters the child wrote before court dates and interviews Hodges knew the child denied the alleged abuse and that investigators' statements were false, yet Hodges failed to correct the record, withheld critical information, and aligned her conduct with DCS' objectives, demonstrating reckless or intentional disregard for Plaintiff's and her child's constitutional rights.

124. Hodges may claim she had no personal involvement in the constitutional violations, but Plaintiff alleges that Hodges' specific actions materially contributed to the continued unlawful removal, coercion, and continued deprivation of Plaintiff's parental rights, including interfering with notice, fair process, and the child's ability to be heard.

125. Defendant Hodges may argue she was simply delegating court communications to the DCS attorney, but Plaintiff alleges that this delegation was not authorized by court rules, and by allowing DCS to speak for her, Hodges actively aligned herself with

DCS rather than remaining neutral, contributing to the deprivation of rights and the continuation of the unlawful custody removal.

126. The actions of Hodges, in coordination with DCS attorney, constitute overt acts in furtherance of a civil rights conspiracy under 42 U.S.C. § 1983 and § 1985, as she knowingly facilitated the deprivation of constitutional rights.

127. Hodges acted as a de facto investigator and advocate for DCS rather than as a neutral officer of the court, coordinating investigative strategy and withholding exculpatory information in furtherance of the removal rather than independently representing the child's best interests.

128. By alleging these facts, Plaintiff demonstrates that Hodges cannot claim immunity or good faith as a shield for her actions, and she should be held liable in her individual capacity for the violations described herein.

129. Plaintiff requests production of all communications, reports, notes, emails, or other records prepared by or shared with Guardian ad Litem Rachel Hodges regarding Plaintiff or Plaintiff's child, including but not limited to:

130. All interview notes or summaries of Plaintiff or her child;

131. Internal communications with any DCS employees or attorneys;

132. Any memoranda, emails, or documents referencing allegations or exonerating evidence related to Plaintiff's child;

133. Plaintiff further requests declaratory and injunctive relief requiring Defendants to produce these communications and confirm that no GAL communications relevant to the investigation will be withheld from Plaintiff in violation of her procedural due process rights.

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 22 of 56    PageID #: 22

134. Despite the dismissal of the case, Plaintiff had already suffered significant emotional distress, reputational damage, and interference with her constitutional rights as a parent.

135. Plaintiff child was removed for 116 days which was unnecessary and prolonged deprivation caused by Defendants refusal to look at the evidence sooner.

136. Plaintiff identified multiple suitable African American relatives for kinship placement, all of whom were subjected to additional requirements, delays, or denial. In contrast, Defendants independently contacted a white relative who had not been identified by Plaintiff and lived 2 hours away.

137. During the time Plaintiff's child was in foster care, Defendants required all African American adult family members to undergo background checks and obtain prior approval before being permitted visitation with the child, purportedly to ensure safety. However, Defendants permitted the child to visit with her white grandmother without requiring any background check, safety verification, or prior approval. This disparate treatment occurred under the same case circumstances and without any legitimate justification, demonstrating inconsistent application of safety requirements based on race. Defendants applied a double standard of safety: African American relatives were treated as 'guilty until proven innocent' through fingerprinting and delays, while a white relative was granted immediate access without any such vetting. This disparate treatment was not based on safety, but on race.

138. Defendants engaged in a coordinated campaign of judicial deception., coordinated their actions, and relied on misrepresented evidence throughout.

Case 1:26-cv-00090-TRM-CHS   Document 1   Filed 03/30/26   Page 23 of 56   PageID #: 23

139. DCS's policies, training, supervision, customs, or failure to adequately supervise investigators contributed to these constitutional violations.

**The Anguish Trauma and Hardships Plaintiff Endured**

140. These actions contributed to extreme emotional distress for Plaintiff and further violated their constitutional and statutory rights.

141. Tyqual McGowan could not sleep well at night. Plaintiff lost weight due to stress the first month child was removed. Hair fell out, Plaintiff experienced heart palpitations during panic attacks and increased migraines.

142. Sometimes the traumatic scenes of the children being taken replay over and over her mind and it feel like it hunts her while she is awake.

143. She still have nightmares of children being taken.

144. Tyqual McGowan began having panic attacks.

145. Tyqual went into depression she cried in the bed all day for periods at a time.

146. Important familiar relationships were broken as a direct result of DCS breaking familiar bonds.

147. Tyqual McGowan still struggle with the effects from having her child, niece, and nephews taken away.

148. As a direct and proximate result of the unlawful actions of Defendants Wayne Skinner, Audrey Jones, Hamilton McCaleb, John Doe 1-10 and Rachel Hodges, Plaintiff Tyqual McGowan has suffered significant harm, including the following:

**A. Loss of Society, Companionship, and Familial Association**

Deprivation of Parental Bond: As a direct and proximate result of the 116-day unlawful removal, Plaintiff was deprived of the society, companionship, comfort, and care of her minor child, J.R.

149. Interference with Familial Integrity: Defendants' actions caused a profound and irreparable disruption to the parent-child bond, a right protected under the Fourteenth Amendment. This includes the loss of daily interaction, shared experiences, and the mutual support inherent in the family unit.

150. Missed Milestones and Routine: During the period of unlawful detention, Plaintiff was prevented from participating in the daily upbringing, education, and emotional development of her child, resulting in a distinct and compensable loss of "life's pleasures" associated with parenthood.

**B. Emotional Distress and Psychological Trauma**

151. Manifestation of Trauma: Plaintiff experienced severe emotional distress, including but not limited to anxiety, depression, panic attacks, and nightmares.

152. Diagnosed Conditions: As a result of the traumatic nature of the removal and the prolonged separation, Plaintiff has been diagnosed with Post-Traumatic Stress Disorder (PTSD) and requires ongoing professional therapy and medication.

**C. Economic Harm and Stigma-Plus**

153. Loss of Income: Plaintiff suffered a direct loss of income and business opportunities due to the emotional toll of the proceedings and the time required to regain custody.

154. Loss of Professional Status: The substantiation of abuse without due process caused "Stigma-Plus" harm, resulting in the loss of Plaintiff's foster care license, the associated stipends, and the ability to care for her foster children (niece and nephews).

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 25 of 56    PageID #: 25

Plaintiff is therefore entitled to punitive damages against individual defendants Wayne Skinner, Audrey Jones, Lisa Earls, Sydney Shaw, Hamilton McCaleb, John Doe 1-10 and Rachel Hodges in their individual capacities to punish egregious conduct and deter similar actions in the future.

**E. Declaratory and Injunctive Relief**

155. Plaintiff seeks declaratory judgment that Defendants violated her constitutional rights. Plaintiff also seeks prospective injunctive relief, including reforms to Tennessee Department of Children's Services policies, practices, and training, to prevent the recurrence of unlawful removals, coercion, and misrepresentation in child welfare investigations.

**F. Costs and Fees**

156. Plaintiff is entitled to recover reasonable attorney's fees, costs, and interest pursuant to 42 U.S.C. § 1988 and any other applicable law.

**G. Other Relief**

157. Plaintiff requests any further relief that the Court deems just and proper to remedy the injuries caused by Defendants' unlawful conduct.

**<u>Failure to Follow Required Procedures</u>**

158. DCS failed to comply with its own policies and procedures for investigations and foster home licensing, including the requirement to provide notice, opportunity to appeal, and documentation of findings.

159. The substantiation and closure of Plaintiff's foster home occurred arbitrarily and without due process, in violation of Plaintiff's constitutional and statutory rights.

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 26 of 56    PageID #: 26

160. Plaintiff has been denied an opportunity for administrative review or appeal regarding the substantiation or closure of her foster home.

161. DCS's actions deprived Plaintiff of protected property and liberty interests without lawful process.

162. In this case, Defendants arrived at Plaintiff's residence based on an alleged abuse report but were unable to provide Plaintiff with a clear explanation of the allegations and did not possess a warrant or court order authorizing removal.

163. Despite the absence of evidence supporting abuse, Defendants continued the investigation for several hours, leaving and returning to the residence multiple times, demonstrating that no emergency existed.

164. Defendants nevertheless represented that they had authority to remove the child and pressured Plaintiff into transporting the child to the Department of Children's Services office before judicial authorization was obtained.

165. The allegation was later classified by Defendants as child abandonment rather than abuse, further demonstrating that the abuse narrative relied upon during the removal lacked evidentiary support.

166. Under clearly established constitutional law, no reasonable investigator could believe that removing a child under these circumstances was lawful.

**CLAIMS FOR RELIEF**

**Count I – Fourth Amendment: Unlawful Seizure of Child**

**Legal Basis: 42 U.S.C. §1983; U.S. Const. amend. IV**

**Against Defendants Wayne Skinner, Lisa Earls, Audrey Jones, and Hamilton McCaleb, Sydney Shaw**

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 27 of 56    PageID #: 27

167. Plaintiff incorporates by reference all preceding paragraphs.

168. Defendants Skinner and Jones are directly liable for the unlawful seizure of J.R. under the Fourth Amendment. Acting under color of law, they entered Plaintiff's home and removed the minor child without a warrant, despite the absence of any 'imminent risk of serious bodily harm.' Their reliance on plaintiff refusal to sign a 'blank' IPA and their misrepresentation of judicial authority to coerce the Plaintiff into surrendering her child constitutes a direct violation of the Plaintiff's and the child's constitutional rights.

169. Defendants Wayne Skinner and Audrey Jones used threats and coercion to compel Plaintiff to comply with the removal.

170. The removal occurred before judicial authorization and despite the absence of any emergency, placing Plaintiff's constitutional rights in violation.

171. Defendant McCaleb's false or recklessly unverified statements were a proximate cause of the unlawful seizure of Plaintiff's child.

172. Defendants Lisa Earls and Sydney Shaw are liable in their individual capacities because they were personally involved in the constitutional deprivation. Specifically, they received contemporaneous updates from Defendants Skinner and Jones and directed, authorized, or ratified the decision to seize J.R. before a judicial order was obtained. By approving the removal despite the documented lack of exigent circumstances and the "break in the chain" of the investigation, Defendants Earls and Shaw demonstrated a reckless disregard for Plaintiff's Fourth Amendment rights and the clearly established law governing warrantless seizures.

173. It is clearly established in the Sixth Circuit that social workers/DCS investigators violate the Fourth and Fourteenth Amendments by removing a child without a warrant, court order, or true exigent circumstances (imminent risk of serious bodily harm).

**Count II – Fourteenth Amendment: Procedural Due Process**

**Legal Basis: 42 U.S.C. §1983; U.S. Const. amend. XIV**

**Against Defendants Wayne Skinner, Lisa Earls, Audrey Jones, Rachel Hodges, Sydney Shaw, Hamilton McCaleb**

174. Plaintiff incorporates by reference all preceding paragraphs. Defendants Wayne Skinner and Audrey Jones deprived Plaintiff of fair procedures before and during the removal of Child.

175. Defendants Wayne Skinner and Audrey Jones coerced interviews without counsel, pressured Plaintiff to sign blank documents, coerced Plaintiff to take J.R. to DCS office, ignored lawful alternatives to foster care placement.

176. Defendants Lisa Earls and Sydney Shaw directed and authorized the use of an "Immediate Protection Agreement" (IPA) as a coercive tool to bypass judicial oversight. By approving the use of a blank or incomplete IPA and threatening Plaintiff with criminal charges and prolonged separation if she did not sign, these Defendants established a "policy of coercion" that deprived Plaintiff of her protected liberty interest in her family unit. Defendants Earls and Shaw had the authority and the duty to intervene when they became aware that J.R. was being seized without a warrant and without a signed, valid safety plan. Their failure to halt the unlawful removal process constitutes a deliberate indifference to Plaintiff's procedural due process rights.

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 29 of 56    PageID #: 29

177. Rachel Hodges' failure to submit child's letters, allow court attendance, or correct false testimony deprived Plaintiff and her child of fair process.

178. Defendant Rachel Hodges withheld letters written by the child and failed to inform the court that the child denied the abuse allegations and the child disclosed she never made any statements reporting abuse to anyone.

179. Defendant McCaleb violated Plaintiff's right to familial integrity by fabricating the very evidence used to justify the removal of J.R. His actions—providing a false statement of abuse—directly interfered with the most fundamental liberty interest protected by the Fourteenth Amendment: the right of a parent to the care and custody of her child. His conduct was not a mere mistake but a deliberate act of deception that 'shocks the judicial conscience.

180. Because Defendants Earls and Shaw bypassed the required procedural safeguards, Plaintiff was unable to stop the immediate cessation of her Foster Care Maintenance Payments and was prevented from clearing her name in time to save her professional reputation. This procedural 'shortcut' caused the Plaintiff actual economic damages exceeding the value of her lost contract with the State.

**Count III – Fourteenth Amendment: Substantive Due Process / Family Integrity Legal Basis: 42 U.S.C. §1983; U.S. Const. amend. XIV**

**Against Defendants Wayne Skinner, Lisa Earls, Audrey Jones , Hamilton McCaleb, Rachel Hodges, Sydney Shaw, John Doe 1-10**

Plaintiff incorporates by reference all preceding paragraphs.

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 30 of 56    PageID #: 30

181. Defendants' Wayne Skinner and Audrey Jones conduct, including removal of the child without judicial authorization, coercion, and disregard for exculpatory evidence, shocked the conscience and violated Plaintiff's fundamental right to family integrity.

182. Defendants' Wayne Skinner and Audrey Jones actions were intentional or undertaken with reckless disregard for Plaintiff's parental rights

183. Defendants Earls and Shaw had a mandatory, non-discretionary duty under DCS Policy 14.7 and the Tennessee UAPA to provide the Plaintiff with written notice and an opportunity to appeal before finalized administrative sanctions were imposed. Their failure to perform this ministerial act directly resulted in the Plaintiff being 'blacklisted' from the foster care system without any legal recourse.

184. Defendants Skinner and Jones are liable for the 116-day deprivation of Plaintiff's familial integrity. By intentionally suppressing exculpatory evidence—specifically the minor children's consistent denials of abuse—they ensured that the 'emergency' removal was transformed into a long-term, unconstitutional separation. Their reliance on fraudulent investigative tactics to maintain state custody is a direct violation of Substantive Due Process.

185. Defendants Earls and Shaw are liable for the violation of Plaintiff's Procedural Due Process rights. As supervisors, they personally ratified the decision to 'Substantiate' the Plaintiff as an abuser and close her foster home without ensuring she received the constitutionally mandated 'Notice of Indication.' By authorizing these life-altering administrative actions without a prior hearing or a post-deprivation remedy, they acted with deliberate indifference to the Plaintiff's right to a fair legal process.

186. Rachel Hodges' actions interfered with the parent-child relationship and contributed to wrongful removal and separation.

187. At all relevant times, the constitutional rule was clearly established that a child may not be seized from a parent's custody without judicial authorization or exigent circumstances creating an immediate threat of serious harm. Defendant McCaleb further interfered with the Plaintiff's fundamental right to familial integrity by actively participating in the "pre-determined" intent to remove the child. His attempt to initiate criminal charges in another jurisdiction (Georgia) without probable cause was a calculated effort to ensure the permanent or prolonged separation of the Plaintiff from her daughter, rather than a good-faith effort to protect the child. His fabrication or reckless disregard for the truth was the proximate cause of the deprivation.

188. John Doe Defendants 1-10, acting in their administrative capacities, finalized the 'Substantiated' finding and issued the closure of Plaintiff's foster home. They did so with deliberate indifference to the fact that no Notice of Indication or Right to Appeal had been served, thereby completing the deprivation of Plaintiff's property interest.

189. Defendants' conduct—removing J.R. after all children denied abuse, without medical evaluation, and while misrepresenting the existence of a court order—violated this clearly established law, so qualified immunity does not apply. As supervisors, Defendants Earls and Shaw maintained a custom or practice of allowing investigators to bypass the Fourth and Fourteenth Amendment requirements for judicial authorization. This systemic failure to supervise Skinner and Jones directly resulted in the "conscience-shocking" outcome where a mother was coerced into surrendering her child based on a false claim of lawful authority.

**Count IV – Fabrication of Evidence / False Statements**

**Legal Basis: 42 U.S.C. §1983; U.S. Const. amend. XIV**

**Against Defendants Wayne Skinner, Lisa Earls, Audrey Jones, Hamilton McCaleb, Rachel Hodges, Sydney Shaw**

190. Plaintiff incorporates by reference all preceding paragraphs.

191. Defendants Wayne Skinner, Audrey Jones, Hamilton McCaleb, knowingly misrepresented that the child made reports of abuse to school officials and fabricated or relied upon false statements to justify removal.

192. Defendant Wayne Skinner failed to verify claims with Lenox Square Mall security, the police department, ignored statements from multiple children denying abuse, and instructed the SRO to pursue warrants without confirming facts.

193. These false statements were used in official filings and testimony, violating Plaintiff's constitutional rights.

194. Rachel Hodges' silence allowed false statements from DCS investigators to go unchallenged, contributing to misrepresentation in court.

195. No reasonable investigator would have relied on unverified, non-existent mandated-reporter documentation or exaggerated injuries after every child denied abuse and exculpatory evidence was ignored

196. Defendant Hamilton McCaleb knowingly, or with reckless disregard for the truth, communicated false or unverified allegations that the minor child reported abuse to school officials.

197. This information was material and was used to establish probable cause for state intervention. No reasonable officer would rely on or communicate such serious allegations without verification, and doing so violated clearly established constitutional rights.

198. Defendants Earls and Shaw specifically authorized the presentation of these fabricated facts to the presiding judge to secure the verbal order at 11:56 PM. This constitutes a deliberate or reckless disregard for the truth, as the supervisors provided the "official" weight of the Department to back up statements they knew, or should have known, were medically and factually unsupported.

**Count V – Coercive Investigation / Intimidation**

**Legal Basis: 42 U.S.C. §1983; U.S. Const. amend. I & IV**

**Against Defendants Wayne Skinner, Lisa Earls, Audrey Jones, Rachel Hodges, Sydney Shaw**

199. Plaintiff incorporates by reference all preceding paragraphs.

200. Defendants Wayne Skinner and Audrey Jones threatened Plaintiff with arrest, loss of custody, and harm to employment to compel cooperation.

201. Defendants Wayne Skinner and Audrey Jones attempted to have Plaintiff sign a blank Immediate Protection Agreement (IPA) and subjected her to undue pressure during the investigation. These coercive tactics violated Plaintiff's rights under the First and Fourth Amendments.

202. Defendants Earls and Shaw maintained a custom or practice of encouraging investigators to present blank or incomplete Immediate Protection Agreements (IPAs) to parents under duress. By authorizing Skinner to demand a signature on a document with no defined

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 34 of 56    PageID #: 34

terms, these supervisors created a "trap" designed to induce an involuntary waiver of parental rights through fear and misinformation. Defendants Lisa Earls and Sydney Shaw are liable for the coercive investigation because they authorized and directed the use of "threat-based" tactics to secure Plaintiff's compliance.

203. Rachel Hodges' alignment with DCS actions facilitated coercive tactics.

**Count VI – First Amendment: Religious Targeting / Burdening Free Exercise**

**Legal Basis: 42 U.S.C. §1983; U.S. Const. amend. I**

**Against Defendants Audrey Jones**

204. Plaintiff incorporates by reference all preceding paragraphs.

205. Defendant Audrey Jones disparaged Plaintiff's religious faith during the removal process and indicated she "had faith in the wrong thing," burdening her free exercise rights.

**Count VII – Fourteenth Amendment: Equal Protection / Arbitrary Treatment**

**Legal Basis: 42 U.S.C. §1983; U.S. Const. amend. XIV**

**Against Defendants Wayne Skinner, Lisa Earls, and Audrey Jones, Sydney Shaw, John Doe 1-10**

Plaintiff incorporates by reference all preceding paragraphs.

206. Defendants Wayne Skinner and Audrey Jones applied removal procedures and fingerprinting requirements inconsistently, treated Plaintiff differently than similarly situated parents, and ignored lawful alternatives.

207. Plaintiff is an African American mother and licensed foster parent. Defendants were aware of Plaintiff's race and her status as a foster parent caring for multiple children at the time of the investigation and removal.

Case 1:26-cv-00090-TRM-CHS   Document 1   Filed 03/30/26   Page 35 of 56   PageID #: 35

208. other parents similarly situated parents investigated by the Tennessee Department of Children's Services were allowed kinship placement without fingerprinting

209. other investigations required actual mandated reporter documentation and thoroughly investigated before making a decision to remove a child from their home.

210. other similarly situated parents investigated by the Tennessee Department of Children's Services received proper notice and appeal rights for foster home closure.

211. Other similarly situated parents investigated by the Tennessee Department of Children's Services received proper notice of indication of abuse and/or neglect.

212. Defendants Wayne Skinner, Audrey Jones, Lisa Earls, Sydney Shaw, John Doe failed to send plaintiff a notice to inform her she was indicated prior to substantiation. Plaintiff was not given the opportunity to appeal or a hearing before she was substantiated. Other similarly situated parents received a notice and a right to appeal before be substantiated.

213. Defendants Wayne Skinner, Audrey Jones and John Doe treated Plaintiff and her African American family members differently than similarly situated white individuals involved in the same case, including permitting a white relative to have contact with the child without background checks or approval while requiring such measures for African American relatives.

214. Defendants John Doe 1-10 independently contacted and facilitated access between the minor child and a white relative who: Was not identified or approved by Plaintiff; Resided approximately two hours away in a different city; Was not subjected to the same background checks, fingerprinting, or approval procedures prior to visitation or contact.

**Count VIII – Malicious Prosecution / Abuse of Process**

**Legal Basis: 42 U.S.C. §1983; U.S. Const. amend. XIV**

215. Plaintiff incorporates by reference all preceding paragraphs.

216. Defendants Wayne Skinner, Audrey Jones, Sydney Shaw, Rachel Hodges continued proceedings even after exculpatory evidence and interviews were presented.

217. Defendants Wayne Skinner, Audrey Jones, Lisa Earls, Sydney Shaw, and Rachel Hodges prolongation of baseless proceedings caused emotional distress and reputational harm.

218. Defendant Hamilton McCaleb participated in the attempt to initiate criminal proceedings against Plaintiff. Whether or not a warrant was successfully obtained, McCaleb's transmission of false or unverified information to Defendant Skinner and potentially the Atlanta Police Department was done with the intent to cause Plaintiff's arrest or further the unlawful removal of her child.

219. At the time of doing so, Defendant McCaleb knew or should have known that the allegations lacked probable cause and were based on false or unverified information. By taking steps to initiate criminal proceedings without probable cause, Defendant McCaleb violated Plaintiff's constitutional rights.

220. Defendants Earls and Shaw acted with malice by ratifying Skinner's and Jones's decision to maintain the child in state custody for 116 days despite having direct access to exculpatory evidence that proved the allegations were unfounded. Defendants Earls and Shaw participated in the 'continuation' of the deprivation of liberty by directing DCS attorneys and investigators to pursue a 'Child Abandonment' theory only after the 'Child Abuse' narrative was proven false, demonstrating a bad-faith intent to maintain control over the child regardless of the facts.

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 37 of 56    PageID #: 37

**Count IX – Civil Conspiracy (42 U.S.C. §1983)**

**Legal Basis: 42 U.S.C. §1983**

**Against Defendants Wayne Skinner, Lisa Earls, Audrey Jones and Rachel Hodges, Sydney Shaw, Hamilton McCaleb**

221. Plaintiff incorporates by reference all preceding paragraphs.

222. Defendants Skinner, Audrey Jones, Lisa Earls, Rachel Hodges, Sydney Shaw, and John Doe 1- 10 agreed to coordinate actions to deprive Plaintiff of her constitutional rights. Overt acts included misrepresentation of evidence, coercion, and pursuing removal without judicial authorization.

223. Defendants Earls and Shaw performed overt acts in furtherance of the conspiracy by: Directing Skinner to proceed with the removal at 7:55 PM based on a false claim of authority; Approving the use of a blank Immediate Protection Agreement (IPA) to coerce Plaintiff's signature; and Coordinating with DCS attorneys to maintain the 'Abuse' narrative in court even after evidence contradicted the theory.

224. Rachel Hodges' conduct intentionally withholding exculpatory evidence known to contradict DCS testimony and delegating her role to the DCS attorney—constituted acts outside the scope of a neutral GAL and in furtherance of a conspiracy, removing any quasi-judicial protection.

225. Defendant McCaleb knowingly agreed, expressly or tacitly, with Defendant Skinner and others to act on false or unverified allegations, including by contacting law enforcement in another jurisdiction to pursue criminal charges without probable cause.

**Count X – Monell Liability Against Tennessee Department of Children's Services**

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 38 of 56    PageID #: 38

**Legal Basis: 42 U.S.C. §1983; Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) Ex Parte Young**

**Against Defendant Tennessee Department of Children's Services**

Plaintiff incorporates by reference all preceding paragraphs.

226. DCS maintained policies, practices, and customs, or failed to train and supervise investigators adequately, which caused or contributed to the constitutional violations described herein.

227. Plaintiff seeks prospective injunctive relief to prevent future violations.

228. This disparate treatment reflects a broader pattern, practice, or custom within DCS of applying investigatory and safety standards differently based on race.

**Count XI – Intentional and Negligent Infliction of Emotional Distress**

**Legal Basis: Tennessee common law**

**Against Defendants Wayne Skinner, Lisa Earls, Audrey Jones, Hamilton McCaleb, Sydney Shaw**

229. Plaintiff incorporates by reference all preceding paragraphs.

230. Defendants Skinner and Jones engaged in extreme and outrageous conduct by intentionally misrepresenting their legal authority. By falsely stating they possessed a court order for removal at 7:55 PM—four hours before any such order existed—they used psychological warfare and deception to coerce Plaintiff into surrendering her child, a tactic that no civilized society should tolerate. Defendants Skinner and Jones subjected Plaintiff to severe emotional distress by demanding she sign a blank Immediate Protection Agreement (IPA). When Plaintiff requested an attorney, Defendants escalated their outrageous conduct by threatening her with immediate arrest, public humiliation,

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 39 of 56    PageID #: 39

and the permanent loss of her child. This 'badgering' of a parent under duress was intended to cause, and did cause, a mental breakdown and severe anxiety.

231. Defendant McCaleb engaged in extreme and outrageous conduct by intentionally or recklessly communicating a false report that Plaintiff's child had disclosed abuse to school officials. As a law enforcement officer, McCaleb knew that this fabricated 'emergency' would trigger a traumatic, high-stakes DCS removal. His decision to initiate a criminal investigation in a foreign jurisdiction (Georgia) without a shred of evidence was a calculated act of harassment designed to inflict maximum distress on the Plaintiff.

232. Defendants Earls and Shaw intentionally or recklessly prolonged the separation of Plaintiff from her child for 116 days, despite knowing that the underlying allegations were fabricated and that all children involved denied abuse. A civilized society does not tolerate the state-sanctioned, indefinite withholding of a child from a safe parent based on known falsehoods, and this conduct was the direct and proximate cause of Plaintiff's diagnosed PTSD, panic attacks, and severe depression. Defendants Earls and Shaw breached their duty of care to follow Tennessee DCS Policy 31.18 and the Fourth Amendment. They were negligent in their supervision by permitting a 'double standard' where African American relatives were subjected to unnecessary hurdles while a white relative was granted immediate access. This negligence resulted in a foreseeable and severe emotional injury to the Plaintiff, manifesting in physical symptoms including weight loss and sleep deprivation."

**Count XII – 42 U.S.C. §1985(3): Conspiracy to Interfere with Civil Rights**

**Legal Basis: 42 U.S.C. §1985(3)**

**Against Defendants Wayne Skinner, Lisa Earls, Audrey Jones, Sydney Shaw**

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 40 of 56    PageID #: 40

233. Plaintiff incorporates by reference all preceding paragraphs.

Defendants Skinner and Jones acted in a coordinated conspiracy to bypass constitutional protections that they routinely afford to non-minority families. Their agreement to ignore safe African American kinship placements in favor of foster care placement demonstrates a discriminatory animus aimed at disrupting Plaintiff's familial integrity based on race.

234. Defendants Earls and Shaw provided the administrative 'meeting of the minds' necessary to execute the conspiracy. By ratifying the disparate treatment of African American kinship markers and authorizing the summary closure of an African American-led foster home without due process, they furthered a racially discriminatory objective to stigmatize the Plaintiff.

235. Defendant McCaleb joined the conspiracy by providing the fabricated evidentiary 'spark' needed to justify the racially motivated removal. His coordination with Skinner to pursue charges without probable cause was an overt step in a plan to deprive an African American mother of her parental rights under the guise of law enforcement necessity.

236. Defendants' actions were motivated by discriminatory animus toward Plaintiff based on her race and her status as a foster parent caring for multiple children, resulting in disparate treatment compared to similarly situated families.

**Count XIII – Fabrication or Misrepresentation of Evidence**

**(42 U.S.C. §1983 – Fourteenth Amendment)**

**Against Defendants Wayne Skinner, Lisa Earls, Audrey Jones, Hamilton McCaleb, Sydney Shaw**

237. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 41 of 56    PageID #: 41

238. Defendant McCaleb is the primary fabricator of the evidence used to initiate this case. By falsely representing to DCS investigators that J.R. had disclosed abuse to a school guidance counselor—a claim later proven false by the school's own records and the child's testimony—McCaleb provided the 'poisoned' evidentiary basis for the subsequent unconstitutional removal.

239. Defendants Skinner and Jones acted with reckless disregard for the truth by adopting and propagating McCaleb's unverified claims without performing a basic investigation. Despite having hours to verify the existence of a mandated reporter form or speak with the counselor directly, they chose to use the fabricated 'school report' narrative as a pretext to bypass the warrant requirement and coerce the Plaintiff into surrendering her child.

240. Defendants Earls and Shaw are liable as supervisors because they personally authorized and directed the presentation of these fabricated facts to the issuing magistrate. By providing the 'official weight' of the Department to back up statements they knew (or should have known through reasonable supervision) were factually unsupported, they turned a subordinate's lie into a state-sanctioned tool of judicial deception.

241. Defendant Hodges participated in the misrepresentation of evidence by knowingly remaining silent while DCS investigators presented the fabricated 'school report' narrative to the Court. Despite having interviewed the child and knowing the child denied ever making such a report, Hodges allowed the judicial deception to continue, thereby facilitating the prolonged 116-day unlawful removal.

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 42 of 56    PageID #: 42

242. By communicating or relying upon false or unverified allegations of abuse, Defendants caused the initiation of government action that resulted in the unconstitutional removal of Plaintiff's child.

243. The fabrication was not a 'mistake' but a coordinated effort to manufacture Exigent Circumstances where none existed. Defendants used the weight of a 'school report' because they knew that 'superficial scratches' alone did not meet the legal threshold for a midnight removal.

244. The 'Judicial Deception' was completed at 11:56 PM when the Defendants collectively presented this fabricated narrative to the Judge to secure a retroactive verbal order, masking the fact that the child had already been effectively seized four hours earlier through coercion.

### Count XIV – Municipal Liability / Failure to Train and Supervise
### (42 U.S.C. §1983 – Monell Liability) Ex Parte Young
### Against Defendants Hamilton County and Tennessee Department of Children's Services

245. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

246. Defendant DCS maintains a de facto policy and widespread custom of utilizing 'emergency' removals in non-emergency situations to bypass the Fourth Amendment. This custom is evidenced by the Department's failure to require investigators to document 'imminent risk' prior to seizure, leading directly to the 116-day unlawful separation of Plaintiff and her child.

247. DCS has established a policy or custom of using blank or incomplete IPAs to induce 'fraudulent consent' from parents under duress. By failing to provide clear rules on the

presentation of these documents, DCS created the environment that allowed Skinner and Jones to threaten Plaintiff with arrest to secure a signature on a blank form.

248. Defendant Hamilton County is liable for its deliberate indifference in failing to train School Resource Officers on the mandatory verification of child abuse reports. The County's lack of a policy requiring SROs to confirm 'disclosures' with mandated reporters before initiating DCS removals was the moving force behind Defendant McCaleb's fabrication of evidence.

249. Hamilton County failed to adequately supervise SRO McCaleb, permitting him to pursue criminal charges in outside jurisdictions without probable cause. This lack of oversight demonstrates a custom of allowing officers to operate outside the bounds of the law, resulting in the 'Stigma-Plus' harm and emotional distress suffered by the Plaintiff.

250. DCS Policy/Custom: Defendant DCS maintained a policy or custom of permitting investigators to rely on medically unsupported terminology (e.g., calling "scratches" "abuse") to bypass judicial warrants.

251. Hamilton County Failure to Train: Defendant Hamilton County failed to train its SROs that fabricating or recklessly communicating unverified abuse reports violates the Fourteenth Amendment. This failure was a "moving force" behind the initial seizure.

252. Hamilton County maintains a custom of 'unquestioned deferral' to SRO reports, failing to require independent verification of child abuse 'disclosures' before initiating state-sanctioned removals, which makes the fabrication of evidence by officers a foreseeable consequence of the County's lack of oversight.

253. Deliberate Indifference: Both entities were "deliberately indifferent" to the obvious risk that untrained investigators and officers would violate the fundamental right to family integrity.

254. Ex Parte Young: Plaintiff seeks prospective injunctive relief against DCS to reform these training policies and prevent future families from suffering similar 116-day unlawful deprivations.

**Count XV – Violation of Due Process (42 U.S.C. § 1983) Legal Basis 42 U.S.C. § 1983Against Defendants Wayne Skinner, Lisa Earls, Audrey Jones, Sydney Shaw**

255. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

256. Defendants Skinner and Jones are liable for violating Plaintiff's procedural due process by finalizing a 'substantiated' finding of abuse and abandonment despite knowing the allegations were unfounded. By failing to provide Plaintiff with the required 'Notice of Indication' prior to substantiation, they effectively stripped Plaintiff of her protected property interest in her foster license without the 'meaningful opportunity to be heard' required by the Fourteenth Amendment.

257. Defendants Earls and Shaw personally authorized and ratified the 'substantiation' of abuse and the subsequent summary closure of Plaintiff's foster home. As supervisors, they had the authority and the legal duty to ensure that Plaintiff received due process— including the right to an administrative hearing—before her professional status was revoked. Their approval of these actions without notice constitutes a deliberate deprivation of Plaintiff's liberty and property interests.

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 45 of 56    PageID #: 45

258. Plaintiff has no adequate remedy at law, and seeks declaratory and injunctive relief, as well as monetary damages for the harm suffered.

**Violation of Mandatory DCS Rules for Substantiated Perpetrator Hearings and Foster-Home Due Process Against Defendants Wayne Skinner, Lisa Earls, Audrey Jones, Tennessee Department of Children's Services, Sydney Shaw**

259. Defendants failed to provide any notice of the substantiation or opportunity for the required administrative hearing mandated by DCS Rule 0250-07-09-.01 et seq. and the Special Investigations Unit due-process procedures, rendering the substantiation and foster-home closure arbitrary, capricious, and in violation of the Tennessee Uniform Administrative Procedures Act and Plaintiff's protected property interest in her foster license.

260. Defendants Skinner and Jones are liable for the violation of mandatory DCS investigative protocols, specifically Policy 31.18, by intentionally omitting exculpatory witness statements from the official case record. By failing to perform the mandatory 'thorough investigation' required by state law before initiating a removal, they triggered a chain of events that deprived Plaintiff of her rights without the protections mandated by the State of Tennessee.

261. Defendants Earls and Shaw violated mandatory administrative duties by ratifying a 'Substantiated' finding of abuse without ensuring the Plaintiff was provided the 'Notice of Indication' and 'Right to Appeal' required by DCS Policy 14.7. As supervisors, their failure to follow these mandatory procedural safeguards was not a mere oversight but a systemic bypass of the Tennessee Administrative Procedures Act.

262. As a direct and proximate result of the Defendants' failure to follow mandatory DCS policies regarding the 'Notice of Substantiation,' Plaintiff was denied the opportunity to appeal the closure of her foster home, resulting in a permanent loss of income and professional standing as a state-certified caregiver.

**Count XVI – Failure to Follow State Administrative Procedures legal basis Tennessee Uniform Administrative Procedures Act (Tennessee Code Annotated § 4-5-101 et seq.)Against Defendants Wayne Skinner, Lisa Earls, Audrey Jones, Sydney Shaw**

263. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

264. Defendants Skinner and Jones violated the mandatory ministerial duties set forth in DCS Policy 31.18 by intentionally omitting the children's denials of abuse and the school's lack of a mandated report from the TFACTS case record. By 'cherry-picking' only incriminating (and fabricated) evidence, they violated the state-mandated standard for a 'thorough and objective' investigation.

265. Defendants Skinner and Jones further violated DCS Policy 31.14 by refusing to process the Plaintiff's mother as an immediate kinship placement, despite her eligibility. This violation directly caused the child's stay in state-funded foster care.

266. Defendants Earls and Shaw, acting in their supervisory capacities, violated the mandatory requirements of DCS Policy 14.7 and the Tennessee Administrative Procedures Act (UAPA). They authorized the 'Substantiation' of the Plaintiff and the summary closure of her foster home without verifying that the constitutionally and statutorily required 'Notice of Right to Appeal' had been served upon the Plaintiff.

267. By ratifying an investigative file that they knew lacked a mandated school report and medical evidence of 'imminent risk,' Defendants Earls and Shaw acted 'arbitrarily and capriciously' in violation of state law, using their authority to punish the Plaintiff rather than follow the Department's safety protocols.

268. As a direct result of these individual Defendants' failure to follow the mandatory ministerial duties of their office, Plaintiff was denied the Foster Care Maintenance Payments she was entitled to for the care of her relatives and suffered the total loss of her professional livelihood as a foster provider. These violations constitute a 'taking' of property without the process mandated by Tennessee law.

269. The closure of Plaintiff's foster home and the substantiation were arbitrary, capricious, and not in accordance with state law, including the Tennessee Uniform Administrative Procedures Act.

270. As a direct and proximate result, Plaintiff suffered economic loss, emotional distress, and reputational harm, including the loss of custody and care of her niece and two nephews. Plaintiff seeks declaratory relief, injunctive relief, and damages as appropriate.

**Count XVII – Stigma-Plus / Liberty Interest Claim Legal Basis Fourteenth Amendment, U.S. Constitution Against Defendants Wayne Skinner, Lisa Earls, Audrey Jones, Sydney Shaw**

271. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

272. The substantiated abuse finding publicly stigmatized Plaintiff, damaging her reputation and professional standing as a foster parent, while simultaneously depriving her of a

protected property and liberty interest—namely, the right to maintain her foster home and provide foster care.

273. Defendants Skinner and Jones violated the Tennessee Foster Parents' Bill of Rights by using coercive tactics—including threats of arrest and the demand for a signature on a blank IPA—to force Plaintiff to surrender her child. Furthermore, they violated Plaintiff's right to receive all information regarding the allegations against her by suppressing the fact that no school report existed and that the children had denied all abuse.

274. Defendants Earls and Shaw violated the Foster Parents' Bill of Rights by arbitrarily denying the placement of the child with Plaintiff's qualified African American relatives, while simultaneously bypassing those same requirements for a white relative. As supervisors, they failed in their statutory duty to provide Plaintiff with timely notice of the substantiation of abuse and the closure of her home, treating her with deliberate hostility rather than the 'professional respect' mandated by state law.

275. The violation of the Foster Parents' Bill of Rights by the individual Defendants was the proximate cause of the destruction of Plaintiff's business and the loss of her foster care stipends. Plaintiff seeks compensatory damages for these economic losses and punitive damages to deter future violations of this statutory 'promise' to Tennessee foster families.

**Enhanced Property-Interest / Stigma-Plus Claim for the Foster License Itself Against Defendants Wayne Skinner Audrey Jones Lisa Earls Sydney Shaw**

276. Defendants deprived her of that interest without any notice or hearing, in violation of clearly established due-process rights.

McGowan v. Skinner, et al. | Complaint
Page 49 of 56

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 49 of 56    PageID #: 49

277. Defendants Skinner and Jones violated Plaintiff's protected property interest by filing a 'Substantiated' finding of abuse based on fabricated evidence. By intentionally skewing the investigative record to support an unfounded allegation, they triggered the automatic suspension of Plaintiff's foster license and the immediate cessation of foster care maintenance payments, all without providing the Plaintiff a prior opportunity to contest the findings.

278. Defendants Earls and Shaw, as supervisors, were the final decision-makers who ratified the 'Substantiated' status and the summary closure of Plaintiff's foster home. They deprived Plaintiff of her property interest by failing to ensure that the mandatory 'Notice of Indication' was served, thereby bypassing the administrative hearing process and permanently damaging Plaintiff's professional standing and income-earning capacity as a state-certified caregiver.

**Count XVIII Violation of the Tennessee Foster Parents' Bill of Rights (T.C.A. § 37-2-415) Against Defendants Wayne Skinner, Lisa Earls, Audrey Jones, Tennessee Department of Children's Services, Sydney Shaw**

279..Defendants violated Plaintiff's rights under the Tennessee Foster Parents' Bill of Rights, T.C.A. § 37-2-415(a)(23) and its implementing regulations by failing to investigate and substantiate the allegations pursuant to DCS child protective services policies and procedures, by closing Plaintiff's licensed foster home and removing the foster children (her niece and nephews) without any notice or opportunity for a formal administrative hearing, and by depriving Plaintiff of financial reimbursement and the ability to continue fostering without following the required grievance and due-process steps.

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 50 of 56    PageID #: 50

280. Defendants Skinner and Jones violated Plaintiff's protected property interest by filing a 'Substantiated' finding of abuse based on fabricated evidence and the reckless omission of exculpatory facts. By skewing the investigative record, they triggered the automatic suspension of Plaintiff's foster license and the immediate cessation of foster care maintenance payments, all without providing the Plaintiff a prior opportunity to contest the findings.

281. Defendants Earls and Shaw, as supervisors, were the final decision-makers who ratified the 'Substantiated' status and the summary closure of Plaintiff's foster home. They deprived Plaintiff of her property interest by failing to ensure that the mandatory 'Notice of Indication' was served, thereby bypassing the administrative hearing process and permanently damaging Plaintiff's professional standing and income-earning capacity.

282. John Doe Defendants 1-10, participated in the deprivation of Plaintiff's property interest by finalizing the revocation of her foster license and stopping all contracted payments. These Defendants acted in concert with the named Defendants to ensure that the Plaintiff was 'blacklisted' from the foster care system without the Due Process required by the Fourteenth Amendment.

283. **Count XIX – Fourteenth Amendment: Equal Protection / Monell Liability (Race Discrimination) Legal Basis: 42 U.S.C. § 1983; U.S. Const. amend. XIV Against Defendants Tennessee Department of Children's Services and Hamilton County**

284. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 51 of 56    PageID #: 51

285. Plaintiff is an African American mother who, at all relevant times, identified multiple suitable, safe, and willing African American relatives for kinship placement of her minor child.

286. These relatives were available for immediate placement and did not pose any safety risk to the child.

287. Despite the availability of these appropriate kinship placements, Defendants subjected Plaintiff's identified African American relatives to heightened scrutiny, including but not limited to: Delays in placement consideration; Additional requirements such as fingerprinting and background checks; Failure to timely evaluate or approve placement; Denial or obstruction of placement without lawful justification.

288.. In contrast, Defendants independently contacted and allowed access between the minor child and a white relative who: Was not identified or approved by Plaintiff; Resided approximately two hours away in a different city; Was not subjected to the same background checks, fingerprinting, or approval procedures prior to visitation or contact.

289. Defendants' decision to bypass Plaintiff's identified African American relatives while favoring a similarly situated white relative demonstrates disparate treatment based on race.

290. This unequal treatment was intentional, discriminatory, and/or carried out with deliberate indifference to Plaintiff's constitutional rights under the Equal Protection Clause of the Fourteenth Amendment.

291. Defendants Tennessee Department of Children's Services maintained policies, customs, or practices that permitted or encouraged racially disparate treatment in kinship placement decisions.

292. These policies, customs, or practices include, but are not limited to: Allowing investigators and decision-makers broad discretion in placement decisions without adequate safeguards against racial bias; Failing to ensure that kinship placement standards are applied equally regardless of race; Failing to properly train, supervise, or discipline employees regarding nondiscriminatory placement practices; Tolerating or ratifying conduct that results in preferential treatment of white relatives over similarly situated African American relatives.

293. Upon information and belief, such discriminatory practices are not isolated to Plaintiff's case but reflect a broader pattern or custom within DCS and associated agencies.

294. The failure to implement adequate policies, training, and supervision regarding racial equity in kinship placements amounts to deliberate indifference to the constitutional rights of parents and children.

295. These policies, customs, and failures to train were the moving force behind the violation of Plaintiff's constitutional rights.

296. As a direct and proximate result of Defendants' conduct, Plaintiff suffered: Loss of familial association; Emotional distress and psychological harm; Prolonged and unnecessary separation from her child; Reputational harm and other damages.

297. Plaintiff is entitled to compensatory damages, punitive damages (where applicable), declaratory relief, and injunctive relief to prevent future discriminatory practices.

298. The disparate treatment of Plaintiff's African American kinship markers is consistent with documented systemic disparities within the Tennessee Department of Children's Services and national trends, where Black families are subjected to higher rates of investigation and more stringent barriers to kinship placement than similarly situated

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 53 of 56    PageID #: 53

white families. This reflects a custom or 'de facto' policy of racial bias in discretionary decision-making.

**REQUEST FOR RELIEF**

299. Plaintiff respectfully requests that the Court enter judgment in her favor and grant the following relief:

**a. Compensatory Damages:** Award Plaintiff compensatory damages in an amount to be determined at trial against all Defendants, jointly and severally, for:

**Loss of Society and Companionship:** For the 116-day deprivation of the care, comfort, and familial association with her minor child;

**Emotional Distress:** For the severe psychological trauma, pain and suffering, and diagnosed PTSD resulting from the Defendants' conduct;

**Economic Loss:** For lost wages, business interruption, and the loss of foster care stipends and associated financial benefits;

**Stigma-Plus Harm:** For the damage to Plaintiff's reputation and the unlawful revocation of her professional status and foster care license.

**b. Punitive Damages:** Award punitive damages against Defendants Wayne Skinner, Audrey Jones, Rachel Hodges, Hamilton McCaleb, Sydney Shaw, John Doe 1-10 and Lisa Earls, in their individual capacities, in an amount sufficient to punish their willful, malicious, and/or reckless disregard for Plaintiff's constitutional rights and to deter such conduct in the future.

**c. Declaratory Relief:** Enter a judgment declaring that the acts and omissions of the Defendants as described herein violated the Fourth, First, and Fourteenth Amendments to the United States Constitution.

**d. Permanent Injunctive Relief:** * Issue an injunction requiring the Tennessee Department of Children's Services to expunge the "substantiated" abuse finding from Plaintiff's record;

Require DCS to implement mandatory training for investigators regarding the "Exigent Circumstances" exception and the verification of mandated reporter documentation;

Require reforms to the kinship placement process to ensure racial equity and the elimination of disparate background check requirements.

**e. Costs and Fees:** Award Plaintiff reasonable attorney's fees, expert witness fees, and the costs of this action pursuant to 42 U.S.C. § 1988.

**f. Other Relief:** Grant such other and further relief as the Court deems just, equitable, and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

Date: 03-30-26

Respectfully submitted,

Tyqual McGowan, Plaintiff Pro Se

6805 Flagstone Dr.

Ooltewah, TN 37363

Phone: 423-316-5750

Email: tyqualstrickland@yahoo.com

Case 1:26-cv-00090-TRM-CHS    Document 1    Filed 03/30/26    Page 56 of 56    PageID #: 56